*Whitaker v. Department of Commerce*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2019

ARGUED: SEPTEMBER 3, 2019
DECIDED: AUGUST 14, 2020

No. 18-2819

STEPHEN WHITAKER, DAVID GRAM, AND ALL SIMILARLY SITUATED
PARTIES,
*Plaintiffs-Appellants,*

*v.*

DEPARTMENT OF COMMERCE,
*Defendant-Appellee.*

————

Appeal from the United States District Court
for the District of Vermont.

————

Before: WALKER, LOHIER, AND CARNEY, *Circuit Judges.*

————

This case arises from plaintiffs' Freedom of Information Act[1] (FOIA) requests for records from the Department of Commerce

---

[1] 5 U.S.C. § 552.

(DOC); the National Telecommunications and Information Administration (NTIA), an agency within the DOC; and the First Responder Network Authority (FirstNet), an independent entity within the NTIA. Plaintiffs appeal from a decision of the United States District Court for the District of Vermont (Crawford, *J.*) dismissing their claims in part and granting summary judgment for defendant in part. We hold that the district court did not err in concluding that (i) FirstNet is not subject to FOIA and that (ii) an agency need not search for records if it has reasonably determined that a search would be futile. We therefore AFFIRM.

————

> KELLY MCCLANAHAN, National Security Counselors, Rockville, MD, *for Plaintiffs-Appellants*.
>
> LAURA E. MYRON, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice (Joseph H. Hunt, Mark B. Stern, *on the brief*), *for* Christina E. Nolan, United States Attorney, Washington, D.C., *for Defendant-Appellee*.
>
> Daniel W. Wolff, Amanda Shafer Berman, Crowell & Moring LLP, Washington, D.C., *for amicus curiae AT&T Corporation*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

This case arises from plaintiffs' Freedom of Information Act (FOIA) requests for records from the Department of Commerce (DOC); the National Telecommunications and Information Administration (NTIA), an agency within the DOC; and the First Responder Network Authority (FirstNet), an independent entity

within the NTIA. Plaintiffs appeal from a decision of the United States District Court for the District of Vermont (Crawford, *J.*) dismissing their claims in part and granting summary judgment for defendant in part. We hold that the district court did not err in concluding that (i) FirstNet is not subject to FOIA and that (ii) an agency need not search for records if it has reasonably determined that a search would be futile. We therefore AFFIRM.

## BACKGROUND[2]

Plaintiffs' FOIA requests concerned the operations of FirstNet. FirstNet was created by Congress in 2012 at the recommendation of the 9/11 Commission to oversee the development of a National Public Safety Broadband Network (NPSBN) for first responders. On March 30, 2017, following FirstNet's request for proposals to build and operate the NPSBN, the bid was awarded to AT&T. AT&T and FirstNet then built an online system called the State Plans Portal (the "Portal") to fulfill FirstNet's statutory obligation to inform state governments about AT&T's winning proposal so that each state could make an informed decision about whether to opt into the national network or receive federal funding to create its own alternative network.[3] On June 19, 2017, FirstNet released plans for the NPSBN through the Portal. State governments had 45 days to review the plans and provide any feedback. On September 29, 2017, a 90-day period began during which states were required either to opt in or out of the national network. That period ended on December 28, 2017.

Between September 1 and October 5, 2017, plaintiffs submitted six FOIA requests. The first three requests, submitted to FirstNet, the

---

[2] This statement of background facts is drawn from the record and is uncontested by the parties.

[3] *See* 47 U.S.C. § 1442(e).

NTIA, and the DOC on September 1, sought user comments submitted to the Portal, communications that the agencies considered to be agreements from states to opt into the national network, and any contracts, agreements, and memoranda of understanding with AT&T. The fourth and fifth requests, submitted to FirstNet, the NTIA, and the DOC on September 25, sought copies of the plans provided to the states and related correspondence and records about the Portal's terms of use. The sixth request, submitted to FirstNet and the NTIA on October 5, sought correspondence from the states affirmatively opting out of the national network.

FirstNet responded to each request with a letter stating that, pursuant to a provision of its enabling statute, 47 U.S.C. § 1426(d)(2), it was exempt from FOIA and therefore had not conducted a search for responsive documents. In response to the September 25 requests, the NTIA produced five unredacted documents concerning the Portal's terms of use. The NTIA responded to all other requests with letters stating that any responsive records would be FirstNet records, not NTIA records, and therefore that it would transfer the requests to FirstNet for possible discretionary disclosure. The DOC responded to each request with a letter stating the same.[4]

On October 6, 2017, plaintiffs commenced the present litigation, alleging eighteen causes of action. Plaintiffs alleged that FirstNet (Counts 1–5), the NTIA (Counts 6–10), and the DOC (Counts 11–15) improperly failed to search for and to produce records in violation of FOIA. Count 16 alleges that, contrary to FirstNet's interpretation, 47

---

[4] On September 1, 2017, plaintiffs submitted an additional FOIA request to the DOC seeking all privacy impact assessments for FirstNet-affiliated systems. The DOC initially responded the same way it had responded to plaintiffs' other requests, but it subsequently directed plaintiffs' counsel to a privacy impact assessment for the "NTIA-035 FirstNet General Support System," which was available on the DOC's public website. That FOIA request and the DOC's response are not a subject of this litigation.

U.S.C. § 1426(d)(2) does not exempt FirstNet from FOIA and seeks declaratory and injunctive relief. Count 17 alleges that the NTIA and the DOC have a policy or practice, in violation of FOIA, of referring to FirstNet all FOIA requests related to FirstNet. Count 18 alleges that the DOC failed to conduct an appropriate privacy impact assessment, as required by § 208 of the E-Government Act of 2002,[5] regarding personal information gathered by FirstNet for the Portal and for the NPSBN. Count 18 seeks an injunction barring FirstNet from collecting personal information until a proper assessment is conducted.

The district court dismissed Counts 1–5 and 16 on the basis that a provision of FirstNet's enabling statute, 47 U.S.C. § 1426(d)(2), exempts FirstNet from FOIA. The district court also granted defendant's motion for summary judgment on Counts 6–15 and 17 because plaintiffs did not introduce evidence that created a genuine dispute of material fact as to whether the NTIA and the DOC complied with FOIA (Counts 6–15) or whether those agencies had a policy or practice of referring FOIA requests to FirstNet (Count 17). On Count 18, the district court dismissed plaintiffs' claims as unripe to the extent that they concerned the NPSBN because that system did not yet exist, and it granted summary judgment for defendant to the extent that the claim concerned the Portal.[6] This appeal followed.

## DISCUSSION

On appeal, plaintiffs argue that the district court erred by concluding that (i) FirstNet is not subject to FOIA; (ii) the DOC and NTIA's decisions not to search for responsive records and to refer plaintiffs' requests to FirstNet were lawful; and (iii) plaintiffs lack

---

[5] 44 U.S.C. § 3501 note.

[6] Plaintiffs state that they "no longer have any interest in the Portal"; their argument on appeal concerns only defendant's alleged "failure to issue a [privacy impact assessment] for the NPSBN and any related systems." Plaintiffs-Appellants Br. at 35.

standing to challenge defendant's compliance with § 208 of the E-Government Act of 2002 and that Count 18 was not ripe to the extent that it concerned the NPSBN.

We review the grant of both a motion to dismiss[7] and a motion for summary judgment[8] *de novo*.

A. <u>FirstNet is exempt from FOIA.</u>

The dismissal of Counts 1–5 and 16 on the basis that FirstNet is exempt from FOIA turns on the statutory interpretation of a provision of FirstNet's enabling statute, 47 U.S.C. § 1426(d)(2). That provision states, in relevant part:

> (d) . . . Any action taken or decisions made by the First Responder Network Authority shall be exempt from the requirements of—
> . . .
>> (2) chapter 5 of title 5 (commonly referred to as the Administrative Procedure[] Act); . . .

Plaintiffs argue that, although FOIA is codified at 5 U.S.C. § 552, within chapter 5 of title 5, § 1426(d)(2) does not exempt FirstNet from FOIA because FOIA is "not commonly referred to as the Administrative Procedure[] Act" (APA).[9] Defendant, in turn, contends that the "commonly referred to" language is simply a parenthetical reminder that does not change the plain meaning of the text exempting FirstNet from the requirements of chapter 5 of title 5.

---

[7] *Kelleher v. Fred A. Cook, Inc.*, 939 F.3d 465, 467 (2d Cir. 2019); *Connecticut v. Duncan*, 612 F.3d 107, 112 (2d Cir. 2010).

[8] *Jackson v. Fed. Express*, 766 F.3d 189, 193–94 (2d Cir. 2014).

[9] Plaintiffs-Appellants Br. at 11.

We agree with defendant. For any statutory interpretation question, we "begin with the plain language, giving all undefined terms their ordinary meaning while attempting to ascertain how a reasonable reader would understand the statutory text, considered as a whole."[10] Here, the language of § 1426(d)(2) is unambiguous: FirstNet "shall be exempt from the requirements of . . . chapter 5 of title 5." It is true, as plaintiffs argue, that the term "APA" is commonly used to refer to that statute's provisions on rulemaking and judicial review of agency action, rather than to the subset of provisions enacted as part of FOIA. As the district court correctly observed, however, that common usage does not negate that "FOIA is codified in company with the more familiar provisions of the APA within Title 5, Chapter 5."[11]

Although the plain meaning of § 1426(d)(2) is sufficient to end our inquiry,[12] we note that the statutory history of the APA supports our conclusion that FirstNet is exempt from FOIA. To begin, although the term "APA" is not commonly used to refer to FOIA, the Supreme Court has explained that "[t]he statute known as the FOIA is actually a part of the Administrative Procedure Act."[13] The location of FOIA within the APA was deliberate. Even before Congress enacted FOIA in 1966, the APA contained a "Public Information" provision, § 3,[14] that required agencies to publish any rules, opinions, and orders that

---

[10] *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (internal quotation marks and alterations omitted).

[11] App'x 216.

[12] *See Devine v. United States*, 202 F.3d 547, 551 (2d Cir. 2000) (citing *Rubin v. United States*, 449 U.S. 424, 430 (1981)) ("In the usual case, if the words of a statute are unambiguous, judicial inquiry should end, and the law is interpreted according to the plain meaning of its words.").

[13] *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989).

[14] Pub. L. No. 79–404, § 3, 60 Stat. 237, 238 (1946).

affected the public's rights and obligations.[15] FOIA was enacted expressly "[t]o amend section 3 of the Administrative Procedure Act . . . to clarify and protect the right of the public to information."[16] In 1967, shortly before FOIA took effect, Congress moved the provisions that comprise FOIA from 5 U.S.C. § 1002 to their current location within the codified version of the APA at 5 U.S.C. § 552.[17]

Finally, we reject plaintiffs' argument that the OPEN FOIA Act of 2009,[18] which amended 5 U.S.C. § 552(b)(3), invalidates statutory FOIA exemptions enacted after 2009 that do not specifically cite subsection (b)(3)(B) of § 552.[19] Section 552(b)(3), known as FOIA

---

[15] *See* H.R. Rep. No. 79–1980, at 21 (1946).

[16] Pub. L. No. 89–487, 80 Stat. 250, 250 (1966); *see also Dep't of the Air Force v. Rose*, 425 U.S. 353, 360 (1976) ("The [Freedom of Information] Act revises § 3, the public disclosure section, of the Administrative Procedure Act"); *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 12 (1974) (noting that FOIA "was enacted in 1966 . . . as a revision of § 3 of the Administrative Procedure Act").

[17] *See* Pub. L. No. 90–23, 81 Stat. 54 (1967).

[18] *See* Pub. L. 111-83, § 564(b), 123 Stat. 2142, 2184 (2009).

[19] As amended by the OPEN FOIA Act, § 552(b) states in relevant part:

> (b) This section does not apply to matters that are—
>> (1)
>>> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;
>> (2) related solely to the internal personnel rules and practices of an agency;
>> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>>> (A)
>>>> (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>>>> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>>> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

Exemption 3, applies to records "specifically exempted from disclosure by statute" when the statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "(ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."[20] Exemption 3 also requires that a statute enacted after the OPEN FOIA Act of 2009 must "specifically cite[] to this paragraph."[21]

Contrary to plaintiffs' argument, Exemption 3 does not apply to agencies in their entirety but instead to certain types of records maintained by agencies—that is, to "matters that are . . . specifically exempted from disclosure by statute."[22] As the district court observed, because 47 U.S.C. § 1426(d)(2) is "not a specific exemption of matters from disclosure, but rather a general exemption of an entire administrative agency from all of the obligations of FOIA,"[23] Exemption 3 has no application here.

In light of the plain language of 47 U.S.C. § 1426(d)(2) and the statutory history of the APA, we hold that § 1426(d)(2) exempts FirstNet from FOIA. We therefore affirm the district court's dismissal of Counts 1–5 and 16.

B. <u>An agency need not search for records if it has reasonably determined that a search would be futile.</u>

Plaintiffs appeal the district court's grant of summary judgment for defendant on Counts 6–15. The district court concluded that the NTIA and the DOC—which are not exempt from FOIA— adequately responded to plaintiffs' FOIA requests. Based on sworn

---

[20] 5 U.S.C. § 552(b)(3)(A).

[21] *Id.* § 552(b)(3)(B).

[22] *Id.* § 552(b)(3).

[23] App'x 218.

declarations from NTIA and DOC officials explaining why the agency would not have responsive records, the district court determined that the agency did not violate FOIA by declining to conduct a search.[24] Plaintiffs challenge the district court's determination that there was no genuine dispute of material fact that a search would be futile, as well as its conclusion that declining to conduct a search was an adequate response to plaintiffs' FOIA requests. This challenge is unavailing.

The legal question is one of first impression in the Second Circuit, as we have not previously defined the circumstances under which an agency may decline to perform a search in response to a FOIA request. The standard applied by the D.C. Circuit, which has particular FOIA expertise,[25] is that when faced with a FOIA request, an agency must conduct an "adequate" search, with "adequacy . . . measured by the reasonableness of the effort in light of the specific request."[26] To respond "adequately," an agency must show that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."[27]

---

[24] *See id.* 219–20.

[25] We recognize the D.C. Circuit as "something of a specialist" in adjudicating FOIA cases, "given the nature of much of its caseload." *Brennan Ctr. for Justice at NYU v. U.S. Dep't of Justice*, 697 F.3d 184, 200 (2d Cir. 2012).

[26] *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (internal quotation marks omitted). For our part, our Circuit has determined that a search was "adequate" when it was "reasonably calculated to discover the requested documents." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

[27] *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To be an "agency record," a record must meet two requirements: first, the "agency must either create or obtain the requested material," and second, it "must be in control of the requested material at the time the FOIA request is made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144–45 (1989) (internal quotation marks omitted).

Drawing primarily from cases within the D.C. Circuit that have considered the circumstances under which an agency may decline to conduct a FOIA search,[28] the district court concluded that "when an agency reasonably determines, based on the nature of the request and the scope of the agency's operations, that it is unlikely to have responsive records and that a search is likely to be futile, it need not proceed with a search."[29] That is because, as the district court for the District of Columbia explained in *MacLeod v. United States Department of Homeland Security*, "[i]t is clear beyond cavil that an agency cannot improperly withhold records that it does not maintain, and that 'where the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at

---

[28] *See* App'x 220 (citing *MacLeod v. U.S. Dep't of Homeland Sec.*, No. 15-cv-1792 (KBJ), 2017 WL 4220398 at *11 (D.D.C. Sept. 21, 2017) ("[W]here the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all.") (quoting *Reyes v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014)); *Jenkins v. U.S. Dep't of Justice*, 263 F. Supp. 3d 231, 235 (D.D.C. 2017) (where an agency demonstrates it is unlikely to possess responsive records, it is not required to conduct a search); *Earle v. U.S. Dep't of Justice*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016) (granting summary judgment for agency where declarant explained that the agency did not maintain the records sought); *Cunningham v. U.S. Dep't of Justice*, 40 F. Supp. 3d 71, 85–86 (D.D.C. 2014) (granting summary judgment for agency where the agency demonstrated that a search would be futile because it does not maintain the requested records); *Espino v. U.S. Dep't of Justice*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012) (granting summary judgment to the agency where it submitted "sufficiently detailed and non-conclusory" declarations "to demonstrate the adequacy of its search"); *Amnesty Int'l USA v. CIA*, No. 07 Civ. 5435 (LAP), 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008) (no search required where declarations of agency officers reasonably describe that, based on their knowledge of their offices, they would not have responsive records); *Am.-Arab Anti-Discrimination Comm. v. US. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007) (FOIA does not require a search for records an agency does not maintain)).

[29] App'x 221. (Although we conclude that the district court erred by using the more forgiving "likely to be futile" formulation, we also determine that it nonetheless reached the correct conclusion.)

all.'"[30] The district court for the Southern District of New York likewise concluded in *Amnesty International USA v. CIA* that "FOIA does not demand a search that would be futile."[31] We see no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, and we therefore conclude that an agency need not conduct a search that it has reasonably determined would be futile.

Plaintiffs attempt to limit the cases cited by the district court to their facts, arguing that an agency may only decline to conduct a search when (i) no records exist because the subject of the request does not exist, (ii) consultation with knowledgeable agency officials indicates that no records exist because the agency has not engaged with the subject matter, or (iii) the subject matter is plainly beyond the purview of the agency. As the district court observed, however, the "unifying principle" that emerges from the decisions addressing this question is not so limited but instead supports the broader rule that an agency need not conduct a search that it has reasonably determined would be futile.[32]

Turning to the application of that standard, we conclude that the district court correctly granted summary judgment for defendant. On summary judgment in FOIA litigation, affidavits submitted by an agency are "accorded a presumption of good faith."[33] Plaintiffs' FOIA requests concerned communications and agreements between FirstNet and various third parties (save for their fifth request concerning the Portal's terms of use, in response to which the NTIA

---

[30] *MacLeod*, 2017 WL 4220398, at *11 (alterations omitted) (quoting *Reyes*, 991 F. Supp. 2d at 27).

[31] *Amnesty Int'l USA*, 2008 WL 2519908, at *11.

[32] App'x 221.

[33] *Grand Cent. P'ship*, 166 F.3d at 489 (internal quotation marks and citations omitted).

produced five responsive records).[34] The agency declarations explained that FirstNet is an independent entity that, with few exceptions not relevant here, may act without the approval of—and without even consulting—the NTIA or the DOC.[35] The declarations detail specifically why the agency employees reasonably determined that a search for responsive records would be futile. For example, in response to the request for copies of all user comments submitted to FirstNet, Kathy Smith, NTIA's Chief Counsel and FOIA Officer, explained that "NTIA personnel did not have regular access to the FirstNet State Plan Portal."[36] Similarly, in response to the request for copies of all contracts with AT&T pertaining to FirstNet, Smith stated that NTIA "is not a party to the contract between FirstNet and AT&T."[37] And Michael J. Toland, DOC's Deputy Chief FOIA Officer, explained that it would be futile to search for responsive documents related to requests about FirstNet because "DOC does not have access to the FirstNet State Plan portal; DOC does not maintain copies of FirstNet's contracts, agreements, memoranda of understanding, and similar documents; and there is no reason to believe that DOC would have copies of communications from state government officials to

---

[34] Plaintiffs requested "copies of all user comments submitted to the FirstNet State Plan Portals" (Request 1), App'x 67; "all communications from any state government officials to [FirstNet], which the agency considers to be agreements (or proposed agreements) to 'opt-in' to the FirstNet system" (Request 2), App'x 69; "all contracts, agreements, memoranda of understanding, etc., with AT&T pertaining to [FirstNet]" (Request 3), App'x 72; "copies of all [FirstNet] plans (and associated correspondence, such as notification letters) made available to U.S. governors" during the specified time period (Request 4), App'x 78; terms of use for the Portal and associated documents (Request 5), App'x 83; and "all correspondence sent by states or territories to FirstNet affirmatively opting out of the FirstNet system" (Request 6), App'x 88.

[35] *See* 47 U.S.C. § 1424(a) (establishing FirstNet as an "independent authority within the NTIA").

[36] App'x 93.

[37] *Id.*

FirstNet with an election to 'opt in' to the FirstNet system."[38] These details adequately explain why defendant would not have records responsive to those requests: the records sought concerned an independent entity's external communications, in which defendant was not required to be involved.

Plaintiffs have submitted no evidence to rebut the presumption of good faith accorded to the declarations. Instead, they argue unsuccessfully that the declarations themselves are insufficient to quell a genuine dispute that the agency's response was adequate. Accordingly, we affirm the district court's determination that there was no genuine dispute of material fact as to the futility of a search by the agency for responsive records.

C. Plaintiffs' remaining claims.

Plaintiffs next challenge the district court's determination that the agency declarations establish beyond genuine dispute that the NTIA and the DOC did not have a practice or policy of referring FOIA requests to FirstNet, in violation of FOIA (Count 17). This challenge is meritless. Plaintiffs concede that "there would be no harm" if the agency were to conduct a search before referring the requests to FirstNet, arguing instead that "[t]he harm comes when DOC components refer requests to FirstNet *without performing a search*."[39] As we have discussed, however, an agency may decline to perform a search if it reasonably determines that a search will be futile, as was the case here.

Moreover, the agency declarations explained that the agencies do not have a "policy of automatically referring to FirstNet all FOIA

---

[38] *Id.* at 123.

[39] Plaintiffs-Appellants Br. at 34 (emphasis in original).

requests for records involving FirstNet."[40] Instead, each agency makes a "case-by-case determination whether it is likely to have responsive records," and "[w]hen [it] determines that it might have responsive records, it conducts a search."[41] This explanation is consistent with the fact that the NTIA produced five records responsive to plaintiffs' fifth FOIA request. Plaintiffs have not provided any evidence to rebut the presumption of good faith accorded to the declarations. We therefore affirm the district court's grant of summary judgment for defendant on Count 17.

Finally, plaintiffs allege that defendant violated § 208 of the E-Government Act of 2002[42] by failing to conduct a privacy impact assessment regarding personal information gathered via FirstNet (Count 18).[43] Plaintiffs affirmatively waived this claim as it relates to the Portal, so we consider it only as it pertains to the NPSBN and any related systems.[44] We agree with the district court that "claims about the privacy of any personal information that might be collected by future FirstNet systems when they do come into existence are not yet ripe for judicial review."[45] And as the district court concluded, there

---

[40] App'x 124 (Toland Decl. ¶ 21); *see also* App'x 94 (Smith Decl. ¶ 20) ("NTIA does not have a policy of automatically referring all FOIA requests for records about FirstNet to FirstNet.").

[41] *Id.* at 94–95 (Smith Decl. ¶ 20).

[42] 44 U.S.C. § 3501 note.

[43] The parties do not dispute that defendant has conducted only one privacy impact assessment, for the NTIA-035 FirstNet General Support System. That assessment was available on the DOC's public website. *See* App'x 238.

[44] Plaintiffs-Appellants Br. at 35 (stating that plaintiffs "no longer have any interest in the Portal" and that their argument on appeal concerns only defendant's alleged "failure to issue a [privacy impact assessment] for the NPSBN and any related systems").

[45] App'x 223. The district court first addressed ripeness in its opinion dated December 20, 2017, concluding that the claim was not ripe because the NPSBN was not yet operational. *Id.* ("[T]o the extent that Count 18 seeks relief for the lack of privacy impact assessments for systems not yet in existence, such a claim is not

is no genuine dispute as to whether the NPSBN is operational: it is not.[46] Plaintiffs therefore cannot have been harmed by the absence of a § 208 privacy assessment. Specifically, we reject plaintiffs' assertion that the district court abused its discretion in denying their motion to strike the declaration of Paul Madison, Chief Counsel for the FirstNet Authority, which defendant submitted along with its supplemental briefing on Count 18 to show that the NPSBN was not yet operational.[47] The media sources plaintiffs identified to show that the NPSBN was operational refer not to the NPSBN but rather to other services provided by AT&T that are marketed under the FirstNet brand. Such mismatched evidence is insufficient to rebut the presumption of good faith accorded to Madison's statement that the NPSBN is not yet operational.[48]

Lastly, the parties spill much ink over whether plaintiffs have statutory standing to bring a claim under § 208. We do not reach this question. Having concluded that plaintiffs' claim is not ripe for review, we do not have subject matter jurisdiction to address whether

---

ripe for judicial review."). In supplemental briefing on the § 208 claim as it related to the Portal, the parties raised additional facts regarding whether the NPSBN was yet operational: plaintiffs cited to various media stories to show that the NPSBN was operational, and the DOC submitted an additional declaration from Paul Madison, Chief Counsel for the FirstNet Authority, to show that it was not. *See id.* at 238–39. The district court concluded that "the Madison declaration establishe[d] beyond genuine dispute that the NPSBN remains nonoperational" and that "[t]o the extent that the Section 208 claim relates to the NPSBN, it remains unripe for review." *Id.* at 240.

[46] *See id.* at 223, 238–40.

[47] *Id.* at 227 (Madison Decl. ¶ 4), 240; *see Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (employing the abuse-of-discretion standard to review a district court's evidentiary ruling).

[48] *See Grand Cent. P'ship, Inc.*, 166 F.3d at 489 (stating that agency affidavits are "accorded a presumption of good faith" in FOIA litigation).

plaintiffs fall within the zone of interests of § 208 and, therefore, whether they have a cause of action under that provision.[49]

## CONCLUSION

For the reasons discussed above, we AFFIRM the judgment of the district court.

---

[49] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 (2014) (concluding that the zone-of-interests analysis is a question of statutory interpretation that "requires us to determine the meaning of the congressionally enacted provision creating a cause of action"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and alterations omitted)).