20-1931-cv
*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2020

Argued: May 28, 2021     Decided: August 18, 2021

Docket No. 20-1931-cv

REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL RESPONSE TRUST, AND RACER PROPERTIES LLC,

*Plaintiffs-Appellants,*

— v. —

NATIONAL GRID USA, NIAGARA MOHAWK POWER CORPORATION, CARRIER CORPORATION, RAYTHEON TECHNOLOGIES CORPORATION, FKA UNITED TECHNOLOGIES CORPORATION, GENERAL ELECTRIC COMPANY, FKA GENERAL ELECTRIC CORPORATION, BRISTOL-MEYERS SQUIBB COMPANY, NEW PROCESS GEAR, INC., MAGNA POWERTRAIN USA, INC., THOMPSON CORNERS, LLC, METALICO SYRACUSE REALTY, INC., METALICO NEW YORK, INC., GARDNER DENVER, INC., ONX1 LLC, ONONDAGA POTTERY COMPANY, SYRACUSE CHINA LLC, LIBBEY GLASS LLC, AMPARIT INDUSTRIES, LLC, 6181 THOMPSON ROAD, LLC, CARRIER CIRCLE BUSINESS COMPLEX LLC, TELESECTOR RESOURCES GROUP, INC., WESTERN ELECTRIC COMPANY, INCORPORATED, SYRACUSE LEPAGE LLC, LENNOX INDUSTRIES INC., SYRACUSE DEERE ROAD ASSOCIATES, LLC, JAGAR ENTERPRISES, INC., CALOCERINOS AND SPINA, C & S ENGINEERS, INC., JOHN DOES, B&B FAMILY LIMITED PARTNERSHIP, HAULER'S FACILITY LLC, 6223 THOMPSON ROAD SUITE 1000 SYRACUSE, NY 13206, HONEYWELL INTERNATIONAL INC., 80 STATE STREET ALBANY, NY 122072543, LOCKHEED MARTIN CORPORATION, 6801 ROCKLEDGE DRIVE BETHESDA, MD 20817,

NEW PROCESS GEAR, INC., 6600 NEW VENTURE GEAR DRIVE EAST SYRACUSE, NY 13507, NOKIA OF AMERICAN CORPORATION, 600 MOUNTAIN AVENUE MURRAY HILL, NJ 07974, NORTH MIDLER PROPERTIES LLC, 6041 SEWICKLEY DRIVE JAMESVILLE, NY 13078, NORTHEAST MANAGEMENT SERVICES, INC., C/O FLORINE BASILE, JR., PRESIDENT P.O. BOX 1238 CICERO, NY 13039, NORTHERN INDUSTRIAL HOLDINGS, LLC, 1675 SOUTH STATE STREET SUITE B DOVER, DE 19901, THOMPSON LAWN, LCC, 7050 CEDARBAY ROAD FAYETTEVILLE, NY 13066, THOMPSON NW, LLC, 7050 CEDARBAY ROAD FAYETTEVILLE, NY 13066, UNITED STATES, CARLYLE AIR CONDITIONING COMPANY, INC.,

*Defendants-Appellees,*

CHRYSLER GROUP LLC, COOPER CROUSE-HINDS, LLC, PRESTOLITE ELECTRIC INCORPORATED, DEERE & COMPANY, CENTER CIRCLES LLC, SOLVENTS AND PETROLEUM SERVICE, INC., ALERIS PARTNERS LLC, FULTON IRON & STEEL CO. INC., BURKO CORPORATION, EMPIRE PIPELINE CORPORATION, OLD CARCO LIQUIDATION TRUST, BY ITS TRUSTEE RJM I, LLC 251 LITTLE FALLS DRIVE WILMINGTON, DE 19808, OLD CARCO LLC, 555 CHRYSLER DRIVE AUBURN HILLS, MI 48236, HOFFMAN MACHINERY CORPORATION, 105 FOURTH AVENUE NEW YORK, NY 10003, OLD ELECTRIC, INC., AKA OLD PRESTOLITE, FKA PRESTOLITE ELECTRIC INCORPORATED,

*Defendants.*[*]

Before:

SACK, LYNCH, AND MENASHI, *Circuit Judges.*

Plaintiffs-Appellants Revitalizing Auto Communities Environmental Response Trust ("RACER Trust") and RACER Properties LLC (together,

---

[*] The Clerk of the Court is respectfully directed to amend the caption as set forth above.

"RACER") appeal an order of the District Court for the Northern District of New York (David N. Hurd, *J.*) dismissing their federal claims for violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and related state law claims. RACER, which was created and funded to clean up polluted locations connected to the former General Motors Corporation during that company's bankruptcy, alleges cost recovery and contribution claims under CERCLA §§ 107 and 113, 42 U.S.C. §§ 9607 and 9613, against dozens of defendants, which RACER alleges contributed to pollution at one of the New York sites it has been tasked with cleaning up. The district court held that RACER's § 107 claim was prudentially unripe against all defendants, and that its § 113 claim either failed to state a claim or was time barred against the moving defendants, and was prudentially unripe against the non-moving defendants. We VACATE and REMAND both holdings, concluding that RACER's CERCLA claims are prudentially ripe, and that all other issues raised by the parties must be addressed by the district court on remand. We also agree with the district court's conclusion that on remand, EPLET, LLC, RACER Trust's trustee, must be substituted as plaintiff.

———————

MATTHEW LITTLETON, Donahue, Goldberg & Littleton, Washington, DC (Alan J. Knauf, Linda R. Shaw, Amy K. Kendall, Knauf Shaw LLP, Rochester, NY, *on the brief*), *for Plaintiffs-Appellants.*

ROBERT A. WIYGUL (Steven T. Miano, Peter V. Keays, *on the brief*), Hangley Aronchick Segal Pudlin & Schiller, Philadelphia, PA,

KRISTIN CARTER ROWE (Dean S. Sommer, *on the brief*), Young/Sommer LLC, Albany, NY,

*for Defendants-Appellees 6181 Thompson Road, LLC; Amparit Industries, LLC; B&B Family Limited Partnership; Bristol-Myers Squibb Company; C & S Engineers, Inc.; Calocerinos and Spina; Carlyle Air Conditioning Company,*

*Inc.; Carrier Circle Business Complex LLC; Carrier Corporation; Gardner Denver, Inc.; General Electric Company; Haulers Facility LLC; Honeywell International Inc.; Jagar Enterprises, Inc.; Libbey Glass LLC; Lockheed Martin Corporation; Magna Powertrain USA, Inc.; Metalico New York, Inc.; Metalico Syracuse Realty, Inc.; National Grid USA; New Process Gear, Inc.; Niagara Mohawk Power Corporation; Nokia of America Corporation; North Midler Properties; Northeast Management Services, Inc.; Northern Industrial Holdings, LLC; Onondaga Pottery Company; ONX1 LLC; Raytheon Technologies Corporation (f/k/a United Technologies Corporation); Syracuse China LLC; Syracuse Deere Road Associates, LLC; Syracuse LePage LLC; Telesector Resources Group, Inc.; Thompson Corners, LLC; Thompson Lawn, LLC; Thompson NW, LLC; Western Electric Company, Incorporated.*

DOUGLAS H. ZAMELIS, Law Offices of Douglas H. Zamelis, Cooperstown, NY, *for Defendant-Appellee Northeast Management Services, Inc.*

CHARLES T. WEHLAND, Jones Day, Chicago, IL, James M. Gross, Jones Day, New York, NY, *for Defendant-Appellee Lennox Industries, Inc.*

GERARD E. LYNCH, *Circuit Judge*:

This case, though only in its infancy, has already mired the parties and the court in a procedural morass. Perhaps that is unsurprising, as it deals with the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), a statute that, as we have previously observed, "is known neither for its concinnity nor its brevity." *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 88 (2d Cir. 2009).

Plaintiffs-Appellants Revitalizing Auto Communities Environmental Response Trust ("RACER Trust") and RACER Properties LLC (together, "RACER") were created during the General Motors Corporation ("GM") bankruptcy pursuant to a Trust Consent Decree and Settlement Agreement, which was approved and entered by the United States Bankruptcy Court for the Southern District of New York, effective March 29, 2011 (the "2011 Agreement" or "Trust Consent Agreement"). GM, the Environmental Protection Agency ("EPA"), a number of states, and the Saint Regis Mohawk Tribe were also parties to the agreement. RACER was established and funded to clean up pollution in and around a number of former GM properties, including the former GM plant site at issue here, located in the Onondaga Lake region of New York.

RACER alleges that after the cleanup of the New York plant site began, the New York State Department of Environmental Conservation ("NYSDEC") – and eventually the EPA – asked RACER to extend its cleanup efforts to an area not

encompassed by the 2011 Agreement. RACER sued several dozen Defendants,[1] which it alleges contributed to the pollution in the expanded territory it is now being asked to address, in an effort to force them to contribute to the costs of cleanup.

RACER brought claims for cost recovery and contribution in the alternative under §§ 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a) and

[1] Defendants-Appellees 6181 Thompson Road, LLC; Amparit Industries, LLC; B&B Family Limited Partnership; Bristol-Myers Squibb Company; C&S Engineers, Inc.; Calocerinos and Spina; Carlyle Air Conditioning Company, Inc.; Carrier Circle Business Complex LLC; Carrier Corporation; Gardner Denver, Inc.; General Electric Company; Haulers Facility LLC; Honeywell International Inc.; Jagar Enterprises, Inc.; Lennox Industries, Inc.; Libbey Glass Inc. (now known as Libbey Glass LLC); Lockheed Martin Corporation; Magna Powertrain USA, Inc.; Metalico New York, Inc.; Metalico Syracuse Realty, Inc.; National Grid USA; New Process Gear, Inc.; Niagara Mohawk Power Corporation; Nokia of America Corporation; North Midler Properties; Northeast Management Services, Inc.; Northern Industrial Holdings, LLC; Onondaga Pottery Company; ONX1 LLC; Raytheon Technologies Corporation f/k/a United Technologies Corporation; Syracuse China Company (now known as Syracuse China LLC); Syracuse Deere Road Associates, LLC; Syracuse LePage LLC; Telesector Resources Group, Inc.; Thompson Corners, LLC; Thompson Lawn, LLC; Thompson NW, LLC; and Western Electric Company, Incorporated filed a joint brief (referred to hereafter as the "Joint Appellees' Br."). Defendant-Appellee Lennox Industries Inc. filed a separate brief, joined by Northeast Management Services (referred to hereafter as the "Lennox Appellees' Br."), and also joins the arguments of the joint brief. There were additional defendants in the district court who are not represented and/or did not appeal, as explained further below and as reflected in the caption. Arguments attributed to "Defendants" appear in the joint brief unless otherwise stated.

9613(f).[2] As discussed more fully below, CERCLA "creates several distinct provisions that authorize parties in different procedural positions to recover costs incurred in cleaning up contamination [including, as relevant here]: (1) section 107(a), which permits the general recovery of cleanup and prevention costs . . . and ([2]) section 113(f)(3)(B), which creates a contribution right for parties that have resolved their liability by settlement." *W.R. Grace & Co.-Conn.*, 559 F.3d at 89 (internal quotation marks omitted). RACER argued that because it has not resolved its liability as to the expanded territory in a judicially approved settlement, its claim should proceed under § 107. However, RACER pleaded a § 113 claim in the alternative, so that it could pursue that avenue of relief if the court found that its liability to clean up the expanded territory *was* resolved, which would bar it from proceeding under § 107. Finally, RACER also alleged several related state law claims, and sought a declaratory judgment as to Defendants' liability.

The district court (David N. Hurd, *J.*) dismissed RACER's complaint. As a threshold matter, the court concluded that, if the suit proceeded, RACER Trust's

---

[2] For ease of reading, we refer to these provisions throughout the Opinion as they are numbered in CERCLA, *i.e.* §§ 107 and 113.

7

trustee must be substituted as a plaintiff because the trust lacks capacity to sue.

On the merits, the district court held that RACER's § 107 claim was prudentially unripe because the EPA is investigating other potentially responsible polluters. The court reasoned that it would be best to allow the EPA to identify other responsible parties and decide on a proper course of action before allowing RACER to pursue other polluters in court. The district court also concluded that RACER would not suffer hardship from delay because it could assert defenses in the bankruptcy proceeding if the NYSDEC or EPA required it to clean up territory not encompassed by the 2011 Agreement. As to RACER's § 113 claim, the district court held that it too should be dismissed, because either it was also unripe, it was time-barred (if the 2011 Agreement established RACER's liability to clean up the expanded territory), or it failed to state a claim (if RACER's liability to clean up the expanded territory had not yet been resolved).

On appeal, RACER contests all of those points and raises a number of other issues. We conclude that the district court was correct to require RACER Trust to substitute its trustee as plaintiff, because the trust lacks capacity to sue. On the merits, we hold that the district court erred in dismissing RACER's complaint at this early stage. RACER's § 107 claim is ripe because it is based on costs RACER

has already incurred for which it may not receive repayment through the EPA investigation, and because further delay in adjudicating the claim would cause RACER hardship. We also conclude that the district court erred in dismissing RACER's § 113 claim. To the extent that the district court concluded that it too was prudentially unripe, we disagree for the same reasons that apply to the § 107 claim. To the extent the district court's dismissal rested on other grounds, the court failed to adequately explain its reasoning and we remand for further analysis. Finally, we decline to address the other issues raised by the parties, which should be addressed by the district court in the first instance, as we explain further below.

Accordingly, we VACATE and REMAND the district court's dismissal of RACER's CERCLA claims. We also VACATE and REMAND the district court's dismissal of RACER's state law claims so that the court may reconsider its ruling in light of this Opinion.

## BACKGROUND

### I.    Factual Background

For many years, GM operated the Syracuse Inland Fisher Guide Plant ("IFG Plant") in the Onondaga Lake region of New York. The Onondaga Lake

region, which suffered from heavy pollution, was added to the National Priorities List of sites eligible for cleanup under CERCLA in 1993. GM ceased operations at the IFG Plant that same year, and the former IFG Plant site is now a subsite of the Onondaga Lake site.

The IFG Plant subsite was further subdivided into two operable units ("OUs") for purposes of the cleanup: OU-1 and OU-2. OU-1 is the site of the former IFG Plant. OU-2 consists of a 9,000 foot stretch of Ley Creek, a waterway adjacent to the former IFG Plant that flows into Onondaga Lake.

When the Onondaga Lake site was added to the National Priorities List in 1993, the EPA entered an agreement with New York's Department of Environmental Conservation ("NYSDEC"), designating it the lead agency for the site. In 1997, the NYSDEC and GM signed a consent order, in which GM agreed to conduct a remedial investigation/feasibility study to investigate and develop a plan to address pollution at the IFG Plant subsite.[3] The 1997 consent order also

---

[3] We use the terms "remedial" and "remediate" throughout this Opinion in the ordinary, non-technical sense, to describe GM's, and later RACER's, efforts to clean up the area. In so doing, we express no opinion as to whether those actions were "remedial" or "removal" actions as defined by CERCLA. *See* 42 U.S.C. § 9601(23)-(24); *MPM Silicones, LLC v. Union Carbide Corp.*, 966 F.3d 200, 218 (2d Cir. 2020).

authorized GM to undertake interim remedial measures in furtherance of the cleanup efforts, and between 2002 and 2004, GM implemented three such measures to avoid further migration of pollution from OU-1 to Ley Creek.

On June 1, 2009, GM declared bankruptcy. The bankruptcy proceedings addressed, among other issues, GM's environmental liabilities. On March 29, 2011, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") approved a Trust Consent Agreement among GM, the EPA, various states pursuing GM, and the Saint Regis Mohawk Tribe. The agreement created RACER Trust, which was charged with cleaning up 89 polluted sites – across 14 states – that were connected with GM, including OU-1 and OU-2 of the IFG Plant subsite. The trust set aside specific dollar amounts for the cleanup of each location, including approximately $22.57 million for OU-1 and $8.55 million for OU-2. The trust was designed to own and operate polluted properties formerly owned by GM, including OU-1, with the goal of eventually selling them for a productive or beneficial use.[4] EPLET, LLC, ("EPLET") was

---

[4] RACER Properties LLC was established on behalf of the trust to hold title to properties formerly owned by GM and now owns OU-1. OU-2, which consists of land beyond the original GM plant site, is not owned by RACER Properties. RACER Properties did, however, acquire a small portion of land along the south side of Ley Creek (the "Ley Creek Subsite"), which has some overlap with OU-2.

named as the trustee of RACER Trust, and signed the Trust Consent Agreement on RACER's behalf.

By virtue of the Trust Consent Agreement, RACER Trust took over GM's remediation efforts and became responsible for rehabilitating OU-1 and OU-2. In 2013, RACER completed the remedial investigation/feasibility study for OU-2 that GM had agreed to undertake in 1997. In response, in March 2015, the EPA and the NYSDEC issued a Record of Decision describing the remediation activities they wished RACER to undertake with respect to OU-2. On October 27, 2015, RACER and the NYSDEC stipulated to a consent order in which RACER agreed to undertake the remediation activities outlined in the Record of Decision.

As RACER began the work outlined in the 2015 consent order, the NYSDEC directed RACER to sample the soil from an expanded area, outside the bounds of the original OU-2 site (the "expanded territory"). The sampling revealed that the expanded territory was also polluted. As a result, according to RACER, "[the NYSDEC] requested that RACER Trust remediate this additional area of approximately 22 acres." Appellants' Br. 7; *see also* J.A. 54 ¶ 27 ("[the NYSDEC] now seeks remediation of lands outside of the original geographic scope of the OU-2 remedial work"). RACER contends that remediating the

12

expanded territory would cost $60 to $93.5 million, significantly more than the $8.5 million allocated by the Trust Consent Agreement to clean up OU-2. RACER alleges that it has already spent about $12.4 million on the investigation and cleanup of OU-2 and the expanded territory. RACER alleges that numerous entities other than GM contributed to the pollution in the expanded territory, but that the NYSDEC has to date been unwilling to consider pursuing other potentially responsible polluters to recover the funding needed to remediate the area. Accordingly, RACER contends that it "ha[s] been and will continue to be damaged by incurring response costs for Environmental Response to the Contamination" of the expanded territory, "well in excess of [RACER's] own equitable share of liability for such remediation resulting from the GM Debtors' historic ownership and operation" of the IFG Plant. J.A. 116 ¶ 404.

In December 2019, after RACER filed its complaint in this case, the EPA assumed lead agency status for the cleanup of OU-2. In September 2020, the EPA requested that RACER complete a feasibility study to assess alternatives for remediating OU-2 and the expanded territory, remediation which it believed RACER was responsible for under the 2011 Agreement. That communication enclosed a draft consent order. Finally, in April 2021, the EPA acknowledged that

13

it "is investigating several parties that it believes may potentially be legally responsible for performing or funding the remediation of [the site], in addition to RACER," but noted that even if other polluters were identified, EPA "is not typically involved in th[e] allocation process" among different polluters and "does not anticipate that it will need to be involved in the allocation of remedial costs" here. App. Ct. Dkt. 244 at Ex. A.

## II.     Procedural Background

In October 2018, RACER filed a complaint in the United States District Court for the Northern District of New York against dozens of entities that allegedly contributed to pollution in the expanded territory. On April 30, 2019, RACER filed an amended complaint, which added new defendants. RACER sought cost recovery and contribution under CERCLA §§ 107 and 113, and also alleged a number of related state law claims. Finally, RACER sought a declaratory judgment holding Defendants liable for polluting the expanded territory.

On November 13, 2019, a group of Defendants jointly moved to dismiss the complaint pursuant to Rule 12(b)(6). On December 3, 2019, a subset of the same group submitted a supplemental brief offering additional arguments for

dismissal. The same day, Honeywell International Inc. independently moved to dismiss the complaint and joined the two previous motions. Several Defendants were not represented before the district court and did not join the motions.

On January 22, 2020, RACER opposed the motion. On March 16, 2020, the district court issued a text order observing that since the complaint was filed, the EPA had taken over from the NYSDEC as the lead agency for the site, and that RACER's claims were premised on the NYSDEC allegedly holding RACER exclusively responsible for the cleanup of the expanded territory. In light of that change in circumstances, the district court ordered RACER to file a sur-reply addressing "why th[e] Court should not grant summary judgment against plaintiffs because [the] EPA's assumption of command has rendered this case moot and/or unripe given that NYSDEC is no longer pursuing a remediation strategy rooted in compelling plaintiffs alone to conduct the environmental cleanup." D. Ct. Dkt. 310. In response, RACER argued that the EPA's assumption of lead agency status did not have any "impact on the justiciability of the lawsuit," because there had been no substantive change in enforcement policy. To the contrary, RACER contended that the EPA – like the NYSDEC – intended to require RACER to investigate the expanded territory as a prelude to

15

remediation. D. Ct. Dkt. 311 at 3. As evidence that its CERCLA cost recovery claim was ripe, RACER also emphasized that it had already incurred costs remediating the expanded territory. On May 12, 2020, the district court dismissed RACER's complaint without prejudice. *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, No. 18-cv-1267, 2020 WL 2404770 (N.D.N.Y. May 12, 2020). The court began by explaining that RACER did not have capacity to sue in its own right, and that its trustee, "EPLET, LLC[,] must be joined and/or ratify any future action as RACER's trustee for RACER to remain as a plaintiff." *Id.* at *7.

The court then turned to RACER's CERCLA § 107 claim for cost recovery. The court concluded that the claim was constitutionally ripe, because RACER had adequately alleged that it had spent money cleaning up the expanded territory. *Id.* at *8. However, the court held that the claim was nonetheless prudentially unripe because the EPA was investigating other potentially responsible parties, and the outcome of that investigation would clarify the scope of RACER's liability vis-à-vis other potentially responsible parties. *Id.* Moreover, the court reasoned that RACER would not suffer hardship from waiting for the EPA to proceed because, were it to continue pressuring RACER to remediate the expanded territory, RACER would be able to assert defenses available to it under

16

the 2011 Agreement. *Id.* at *8-9. Finally, the court rejected RACER's argument that it would suffer hardship from the expiration of the statute of limitations because, regardless of how RACER's and GM's previous cleanup efforts were analyzed, the "limitation period ha[d] either not yet begun, or else ha[d] already run out." *Id.* at *9-10. In either case, the court reasoned, RACER would not be prejudiced by waiting for the EPA to identify other responsible polluters. *Id.*

The court further concluded that RACER's CERCLA § 113 claim for contribution should also be dismissed without prejudice. The court reasoned that either, as RACER argued in advancing its § 107 claim, its liability to remediate the expanded territory was not contemplated by any prior agreement and therefore RACER failed to state a § 113 claim, or, if the 2011 Agreement *did* establish RACER's liability to remediate the expanded territory, then the § 113 claim was time-barred. *Id.* at *11-12. The court further held that "as to the unrepresented defendants and John Does . . . the same prudential ripeness analysis counsels in favor of dismissing [the] § 113 claims" because, if the EPA were to identify and pursue other responsible polluters of the expanded territory, that would clarify the scope of RACER's liability. *Id.* at *13. Ultimately, the court

suggested that it was dismissing *both* CERCLA claims as unripe, stating "plaintiffs' claims are not ripe and must be dismissed." *Id.* at *14.

Having dismissed RACER's federal claims, the district court declined to exercise supplemental jurisdiction over RACER's state-law claims and entered judgment accordingly. *Id.* at *13-14. This appeal followed.

## DISCUSSION

We begin with the threshold issue of RACER's capacity to sue. We agree with the district court's conclusion that in order to proceed, RACER's trustee must be substituted as plaintiff. Turning next to RACER's CERCLA claims, we conclude that the district court erred in dismissing the § 107 claim as prudentially unripe. As to the § 113 claim, we vacate the district court's judgment. To the extent that judgment rested on the conclusion that the § 113 claim was prudentially unripe, we disagree for the same reasons that we conclude the § 107 claim is ripe. To the extent the district court's judgment rested on other grounds, the court failed to adequately explain its reasoning. Finally, as explained below, we decline to address the remaining issues that the parties raised, which should be decided by the district court in the first instance.

18

## I.     Capacity to Sue

The district court concluded that RACER Trust lacks capacity to sue and that RACER Trust's trustee, EPLET, must be joined as a plaintiff. We review *de novo* the district court's interpretation of Federal Rule of Civil Procedure 17, as well as its application of state law to determine capacity to sue pursuant to that rule. *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 229 (2d Cir. 2006); *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 19-20 (2d Cir. 2018).

On appeal, RACER contends that RACER Trust has the capacity to sue because Federal Rule of Civil Procedure 17(a) – which governs whether a party qualifies as the real party in interest – allows RACER Trust to sue in its own name. Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest" but that "a trustee of an express trust . . . *may* sue in [its] own name without joining the person for whose benefit the action is brought." Fed. R. Civ. P. 17(a)(1) (emphasis added). RACER argues that Rule 17's "permissive language" indicates that a suit in which an express trust is the real party in interest *may*, but need not, be brought by its trustee without joining the trust as a plaintiff. Appellants' Br. 47. It follows, RACER argues, that a trust can also bring suit in its own name.

19

However, RACER's argument fails to respond to the issue raised by Defendants and resolved by the district court – namely, whether RACER Trust has *capacity* to sue – which is governed by Rule 17(b), not Rule 17(a). "'[C]apacity has been defined under Rule 17(b) as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest or is the real party in interest.'" *Horowitz*, 888 F.3d at 20 (alteration omitted), quoting Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1559 (3d ed. 2017).

Rule 17(b) provides rules for determining the capacity to sue or be sued of "an individual," "a corporation," and "all other parties." Fed. R. Civ. P. 17. Because RACER Trust is not an individual or a corporation, its capacity is determined by the "the law of the state where the court is located," i.e. New York. Fed. R. Civ. P. 17(b)(3).

Under New York law, "an express trust vests in the trustee the legal estate," and the trustee is the party with capacity to sue on behalf of the trust. N.Y. Est. Powers & Trusts Law § 7-2.1(a); *Ronald Henry Land Tr. v. Sasmor*, 990 N.Y.S.2d 767, 768 (App. Term 2014); *see also Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("Traditionally, a trust was not considered a distinct

20

legal entity, but a 'fiduciary relationship' between multiple people. . . . [L]egal proceedings involving a trust were brought by or against the trustees in their own name."). RACER all but concedes that RACER Trust should be treated as an express, or "traditional," trust under New York law. It does not contest the district court's determination that RACER Trust is not a business trust. Instead, it relies on a provision of Rule 17(a) that addresses "express trusts" in support of its argument that it has the capacity to sue. Although RACER half-heartedly argues that "an environmental remediation trust created in a federal bankruptcy proceeding" should be treated differently than a traditional trust under state law, Appellants' Reply Br. 18, it offers no rationale, or supporting authority, for that proposition. Moreover, even assuming *arguendo* that RACER is correct, that RACER Trust is *sui generis*, the agreement creating it vests the power "to prosecute and defend lawsuits or administrative actions or proceedings on behalf of the Environmental Response Trust" in its trustee. J.A. 717. Accordingly, we are persuaded that EPLET, not RACER Trust, has capacity to sue on behalf of the trust.

That conclusion brings us to the question of the proper remedy. "[C]apacity to sue . . . is non-jurisdictional in nature," *Fund Liquidation Holdings*

*LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir. 2021), and can be waived. *See, e.g.*, *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005). Although Defendants argued below that the case should be dismissed due to RACER Trust's lack of capacity, they now concede that "[t]he District Court correctly held that EPLET, as the trustee, must be joined and/or ratify this action as RACER's trustee for RACER to remain as a plaintiff." Joint Appellees' Br. 20 (internal quotation marks omitted).[5] RACER has indicated that if this action is remanded, it will "add or substitute EPLET as a party," satisfying the district court's condition. Appellants' Br. 48.[6] Moreover, we have previously held that dismissal should be avoided where, as here, it would lead to the trustee

---

[5] Defendants also argue that *more* than adding or substituting EPLET is required, citing *Federal Treasury Enterprise Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013). That argument misapprehends our decision in *Federal Treasury Enterprise*, which set out what actions a real party in interest must take to ratify a suit that it did not join. *Id.* at 83-84.

[6] The district court, and RACER on appeal, rely on Rule 17(a)(3)'s admonition that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." It is not clear that Rule 17(a)(3) applies here, since RACER Trust's problem is lack of capacity to sue, not a failure to prosecute in the name of a real party in interest. But to the extent that it does apply, it also supports allowing RACER Trust to substitute its trustee as a plaintiff.

22

"simply refiling the complaint . . . and a completely wasteful repetition of proceedings that have already occurred." *Allan Applestein*, 415 F.3d at 246.[7] Accordingly, we conclude that Racer Trust's incapacity does not require dismissal of this case. On remand, the complaint should be amended to substitute EPLET as plaintiff.

## II.     CERCLA Claims

CERCLA's "dual goals [are] cleaning up hazardous waste and holding polluters responsible for their actions." *New York v. Next Millennium Realty, LLC*, 732 F.3d 117, 124 (2d Cir. 2013). Section 107(a) "provides a cause of action for private parties to seek recovery of costs from a potentially responsible party of any necessary costs of response to a release of hazardous substances." *MPM Silicones, LLC v. Union Carbide Corp.*, 966 F.3d 200, 214 (2d Cir. 2020) (internal quotation marks and alterations omitted). "[S]ection 113(f)(3)(B) . . . creates a contribution right for parties that have resolved their liability by settlement." *Consol. Edison Co. of New York v. UGI Utilities, Inc.*, 423 F.3d 90, 94 (2d Cir. 2005).

---

[7] There appears to be no question that dismissal here would result in such a refiling. No party suggests that EPLET disapproves of this suit, or that officials at RACER filed this action without EPLET's knowledge or approval.

RACER pleaded two CERCLA claims in the alternative: a § 107(a) claim to recover costs it incurred cleaning up the expanded territory, and a § 113(f)(3)(B) contribution claim for those same costs, should the court determine that a prior agreement resolved its liability. The district court concluded that the § 107 claim was unripe. As to the § 113 claim, the district court concluded either that it was prudentially unripe as to the non-moving defendants, and that it was either time-barred (if the 2011 Agreement established RACER's liability to clean up the expanded territory) or it failed to state a claim (if RACER's liability to clean up the expanded territory had not yet been resolved) as to the moving defendants. We first address the ripeness of the § 107 claim and then address the district court's decision regarding the § 113 claim and the interplay between the two claims.

*A. Section 107 Claim*

We review the district court's ripeness determination *de novo*. *Connecticut v. Duncan*, 612 F.3d 107, 112 (2d Cir. 2010).[8] "Ripeness is a term that has been used

---

[8] Defendants argue that we should distinguish between constitutional ripeness, which they agree should be reviewed *de novo*, and prudential ripeness, which they argue should be reviewed for abuse of discretion because it involves an exercise of the district court's judgment. Although that argument is not wholly implausible, our precedents dictate otherwise. *Connecticut*, 612 F.3d at 112; *accord,*

to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction," which address "whether a case has been brought prematurely." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 109-10 (2d Cir. 2013) (internal quotation marks omitted). Constitutional ripeness, the first threshold criterion, is "drawn from Article III limitations on judicial power . . . [and] overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Id.* (internal quotation marks omitted).

Here, the district court concluded that RACER's claim was constitutionally ripe because RACER adequately alleged that it had already spent funds cleaning up the expanded territory. Showing such expenditures is, moreover, a necessary element of a claim for cost recovery: The claimant must allege that costs have been incurred. *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 80 (2d Cir.

---

*Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021). In any event, reviewing the district court's decision for abuse of discretion would not alter the outcome in this case.

2014). We focus our attention on the second threshold criterion in dispute –

whether RACER's § 107 claim is prudentially ripe.[9]

Prudential ripeness, in contrast to constitutional ripeness, "constitutes an

important exception to the usual rule that where jurisdiction exists a federal court

must exercise it, and allows a court to determine that the case will be better

decided later." *MTBE*, 725 F.3d at 110 (internal quotation marks omitted). "In

determining whether a claim is prudentially ripe, we ask whether the claim is fit

for judicial resolution and whether and to what extent the parties will endure

hardship if decision is withheld." *Id.* (internal quotation marks and alterations

omitted).

We begin by noting that many of Defendants' arguments appear to be

focused on whether RACER's claim for *future* costs is prudentially ripe. They

argue, for example, that RACER's claim is "premature" because any costs

RACER might incur are "contingent on future events," namely, the Bankruptcy

---

[9] The Defendants argue in summary fashion, in a footnote, that the district court erred in concluding that the case was constitutionally ripe. "We ordinarily deem an argument to be forfeited where it has not been 'sufficiently argued in the briefs,' such as when it is only addressed in a footnote." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). We therefore do not consider this argument on appeal.

Court's authorizing RACER to clean up the entire expanded territory. Joint Appellees' Br. 33. The district court concluded, however, that RACER had adequately alleged that it had already incurred costs cleaning up the expanded territory, and Defendants do not argue otherwise. Therefore, although the district court may ultimately enter a declaratory judgment on liability that will be binding as to liability for future necessary costs, as RACER requests in its complaint, the question before us is whether RACER's existing claim, premised on the costs it has *already incurred*, is ripe.[10] We conclude that it is.

First, the claim is fit for judicial decision. There is, as the district court properly acknowledged, "no future contingent event that is strictly necessary to resolv[e]" the claim. *Revitalizing Auto Cmtys.*, 2020 WL 2404770 at *8; *see also Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 691 (2d Cir. 2013). Unlike claims that

_____

[10] Under § 113(g)(2), once a party's liability has been established, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action" for response costs. Moreover, "[t]he fact that future costs are somewhat speculative is no bar to a present declaration of liability." *New York v. Green*, 420 F.3d 99, 111 (2d Cir. 2005). Of course, the district court need not consider liability for any future costs until it determines whether there is liability for the costs RACER has already incurred; we merely observe that Defendants' arguments about the speculative nature of future costs RACER may incur are not relevant to the ripeness of its current claim for costs already incurred.

we have held prudentially unripe, it does not appear "possible that a resolution of [RACER's] current claims will not be necessary in the future," *Simmonds v. I.N.S.*, 326 F.3d 351, 360 (2d Cir. 2003). Whether or not the EPA or the NYSDEC requires RACER to continue to remediate the expanded territory, RACER has already spent money that it is entitled to attempt to recover. Similarly, any decision the Bankruptcy Court makes as to whether RACER is permitted to expend its funds cleaning up the expanded territory, and any defenses that RACER might assert there, will not affect the money that RACER has already spent. "What future contingencies remain are not determinative of the questions before us." *Nat'l Org. for Marriage*, 714 F.3d at 691 (internal citation omitted).

The district court concluded that because the EPA had "stated its intention to pursue other [polluters]," *Revitalizing Auto Cmtys.*, 2020 WL 2404770 at \*8, it would be better for all parties to wait for the EPA to proceed. But that conclusion fails to take account of several salient facts. First, it is not clear that the EPA's pursuit of other polluters would give RACER the opportunity to recover costs already spent. Moreover, the EPA has indicated that although it is "investigating several parties that it believes may potentially be legally responsible for performing or funding the remediation of [the expanded territory], in addition to

28

RACER . . . [it] does not anticipate that it will need to be involved in the allocation of remedial costs" among different responsible parties, once those parties have been identified. App. Ct. Dkt. 244 at Ex. A. Therefore, even if the EPA does identify and pursue other responsible parties, RACER's claims for cost recovery could remain unresolved.

We are also persuaded that RACER would suffer hardship if required to wait for the EPA's investigation to proceed. The EPA is in "the early stages of [its] enforcement efforts" with regard to the expanded territory. *Id.* at 4. Defendants want RACER to wait for however long the EPA process takes before seeking cost recovery. But even setting aside the question of whether RACER's claims would become time-barred during that process, RACER would still be required to wait, possibly for years, before a court conclusively determines whether RACER could seek repayment for costs it has already incurred. That is a "present detriment" sufficient to constitute hardship, not "[t]he mere possibility of future injury." *Simmonds*, 326 F.3d at 360.

Defendants' arguments that the district court's conclusion should be affirmed are similarly unpersuasive. Defendants assert that RACER has not been ordered to remediate the expanded territory. But regardless of whether that is

29

correct, "[a] private party may recover under § 107(a) without any establishment of liability to a third party." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007). Thus, § 107(a) "permits a party . . . to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment." *Consol. Edison Co. of New York v. UGI Utils., Inc.*, 423 F.3d 90, 100 (2d Cir. 2005). To the extent that RACER incurred costs cleaning up the expanded territory voluntarily, and not because it was legally required to do so by the NYSDEC or the EPA, the fact that its action was voluntary does not bar RACER from recovery under § 107, or demonstrate that its claim is not fit for judicial resolution.

Defendants also argue that the extent of RACER's legal authority to perform work in the expanded territory should be resolved before RACER is permitted to recover costs incurred in performing that work. That too is unpersuasive. As explained above, it may be the case that RACER acted improperly in undertaking the cleanup of the expanded territory without seeking authorization from the Bankruptcy Court. But that has little to do with RACER's claim against *Defendants*, which turns only on whether RACER incurred "necessary costs of response . . . consistent with the national contingency plan," § 107(a)(4)(B). And future Bankruptcy Court adjudication of the issue of RACER's

30

authority to undertake remediation of the expanded territory, however the court decides that issue, will not repay RACER for the costs it has already incurred.

Similarly, Defendants' argument that RACER would have compelling defenses under the 2011 Agreement as to any liability to clean up the expanded territory does not affect the court's ability to resolve RACER's § 107 claim. Defendants argue that whether (and to what extent) the Bankruptcy Court will authorize RACER to clean up the expanded territory is "necessarily antecedent," Joint Appellees' Br. 32, to whether RACER is permitted to recover from Defendants. Not so. Defendants are neither parties to nor intended beneficiaries of the 2011 Agreement and cannot press the provisions of that agreement as a defense. And RACER may recover from Defendants regardless of whether the Bankruptcy Court approves the expenditures it has made.[11]

---

[11] Moreover, even if RACER could avoid liability by contesting the EPA's orders or litigating before the Bankruptcy Court its authority to clean up the expanded territory, it is for RACER and its trustee, not the district court, to weigh the potential costs and chances of success of such litigation. Depriving RACER of the right to choose its best strategy for avoiding unjustified costs itself poses hardship on RACER. Neither we nor the district court are in a position to determine that the proposed alternative strategies would better minimize the hardship to RACER.

Finally, we observe that the Supreme Court has recently cast doubt on the reach of the prudential ripeness doctrine. In *Lexmark International, Inc. v. Static Control Components, Inc.*, the Court explained that a federal court's ability to decline jurisdiction on prudential ripeness grounds must be reconciled with the "virtually unflagging" obligation of a court "to hear and decide cases within its jurisdiction." 572 U.S. 118, 125-26 (2014) (internal quotation marks omitted). In *Susan B. Anthony List v. Driehaus*, the Court went further, calling into question "the continuing vitality" of the prudential ripeness doctrine (though concluding that it need not resolve that issue because the "fitness" and "hardship" factors were "easily satisfied" in that case). 573 U.S. 149, 167 (2014). Since *Lexmark* and *Susan B. Anthony*, we have not directly addressed whether the prudential ripeness doctrine remains good law. *But see, e.g.*, *MPM Silicones*, 966 F.3d at 233 (applying the doctrine). Assuming that it does, however, the Supreme Court's cautious approach to prudential ripeness is a reminder that the doctrine constitutes a narrow exception to the strong principle of mandatory exercise of jurisdiction. That caution reinforces our conclusion that the district court erred in finding RACER's § 107 claim prudentially unripe.

For all of those reasons, we conclude that RACER's § 107 claim is ripe for adjudication. In doing so, we express no opinion on any other threshold matter raised by the parties, or on the merits of the claim, none of which the district court has yet addressed. In particular, although the district court discussed in dicta several reasons why RACER's claim may be time-barred, that issue was not decided by the district court, and we therefore decline to address it on appeal.

*B. Section 113 Claim*

We turn now to RACER's § 113 claim as to the expanded territory, which the district court dismissed without prejudice, because it was prudentially unripe as to the non-moving defendants, and it was either time-barred (if the 2011 Agreement established RACER's liability to clean up the expanded territory) or it failed to state a claim (if RACER's liability to clean up the expanded territory had not yet been resolved) as to the moving defendants. We review a district court's order on a motion to dismiss for any of those reasons *de novo*. *Duncan*, 612 F.3d at 112; *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019); *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015). We conclude that the district court erred in dismissing the claim.

33

"[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances." *Atl. Rsch. Corp.*, 551 U.S. at 139 (internal quotation marks omitted). In particular, the Supreme Court has explained that,

> a [polluter] that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the [polluter] has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the [polluter] cannot simultaneously seek to recover the same expenses under § 107(a).

*Id.* The United States Supreme Court and this court have further concluded that where a plaintiff's claim "fits squarely within the more specific requirements of § 113[]," the plaintiff cannot choose instead to proceed under § 107. *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 127-28 (2d Cir. 2010) (holding that the plaintiff could not proceed under § 107 where a Consent Order between the NYSDEC and the plaintiff had given rise to a contribution claim under § 113); *see also Territory of Guam v. United States*, 141 S.Ct. 1608, 1611 (2021)

34

(holding that a settlement must resolve a CIRCLA-specific liability to trigger a contribution action under § 113(f)(3)(B)).[12]

Here, RACER pleaded claims as to the expanded territory under §§ 107 and 113 in the alternative. On appeal, RACER explains that it believes it has not "resolved its liability to the United States or a State" as to the expanded territory, the prerequisite for § 113 claim, *see* § 113(f)(3)(B), and therefore, that it *must* proceed under § 107. Appellant's Brief at 38. However, RACER contends that it pleaded both claims because, if the district court concludes that RACER cannot proceed under § 107 because it has a viable § 113 claim to the expanded territory, then RACER wishes to pursue that claim in the alternative.

---

[12] *But see Atl. Rsch. Corp.*, 551 U.S. at 139 n.6 (explaining that it is not the case that "§§ 107(a)(4)(B) and 113(f) have no overlap at all" and that, in particular, "a [polluter] may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a)" and declining to decide "whether th[o]se compelled costs of response are recoverable under § 113(f), § 107(a), or both"); *Niagara Mohawk Power Corp.*, 596 F.3d at 127 n.17 (noting that "[i]n *Atlantic Research*, the Supreme Court left open the question of when an action for cost recovery under § 107(a) may be available to a [potentially responsible party] that directly incurs clean up costs under some judicial or administrative compulsion" and declining to decide "whether a § 107(a) action could be pursued by a PRP [potentially responsible party] that incurs clean up costs after engaging with the federal or a state government, but is not released from any CERCLA liability").

35

The district court dismissed RACER's § 113 claim without prejudice,

reasoning that:

> [I]f plaintiffs are correct in their argument that the expanded territory is not contemplated by any prior agreement, then there is no predicate settlement agreement for their § 113 claims and they have failed to state a claim. Alternatively, if any agreement did establish plaintiffs' liability under CERCLA for the purposes of their seeking contribution, that agreement was plainly the 2011 Agreement, and not the 2015 Agreement. Thus plaintiffs' § 113 claims fall well outside of the three-year statute of limitations. In either case, plaintiffs' § 113 claims against the moving defendants and Honeywell must be dismissed without prejudice.

*Revitalizing Auto Cmtys.*, 2020 WL 2404770 at *12. Later, the district court also

concluded that RACER's § 113 claim was prudentially unripe as to the

unrepresented defendants and John Does for the same reasons that its § 107 claim

was unripe. *Id.* at *13. Finally, the district court stated in its conclusion that

"plaintiffs' claims are not ripe," *id.* at *14, suggesting that its prudential ripeness

determination served as the basis for dismissal of *both* of RACER's CERCLA

claims. In short, the district court's decision does not make clear why it dismissed

RACER's § 113 claim.

36

To the extent that the district court's dismissal rests on a conclusion that the § 113 claim, like the § 107 claim, is prudentially unripe, we disagree for all of the reasons previously stated. If the district court concludes that RACER does not have a viable § 107 claim but can, in the alternative, pursue a § 113 claim for contribution for the costs already incurred, we disagree that adjudication should be delayed until the EPA process is complete. As we have already explained, it is not clear that the EPA process will establish RACER's right to recover costs already incurred, and RACER will suffer hardship if it is required to wait, possibly for years, before recovering money it has already spent.

Alternatively, to the extent that the district court's dismissal rested on its conclusion that either RACER failed to state a claim under § 113 or that any such claim would be time-barred, the district court did not state that those are separate, individually sufficient reasons for dismissal. Instead, it merely concluded that one or the other must exist, even though each reason rests on a contradictory interpretation of the 2011 Agreement.

Moreover, to the extent that the § 113 claim is in fact time-barred, the proper response would be to dismiss the claim *with* prejudice, and to the extent that the current complaint fails to state a claim, the district court would need to

consider whether the defects giving rise to that conclusion are remediable, or whether they could not be cured by any plausible amendment, leading in the latter case to dismissal again *with* prejudice. The fact that the district court decided none of these things suggests that its dismissal *without* prejudice was not a definitive resolution of any of these issues but was rather, like its prudential ripeness decision, a temporizing measure that merely postponed a definitive reckoning with the issues. Such an approach may have had some appeal if the § 107 claim was properly deferred as prudentially unripe. But we see no reason to approve such a practice with the § 107 claim restored to the district court's docket.

Therefore, because the district court did not conclusively address either issue, we conclude that the appropriate course of action is to vacate that portion of the district court's decision. As we have stated before, "[i]f the court fails to make findings and to give an explanation, and the reason for the court's ruling is not clear to us, we will remand for findings and an explanation." *Beckford v. Portuondo*, 234 F.3d 128, 130 (2d Cir. 2000); *see also id.* ("[I]t is [not] our function to decide motions . . . in the first instance. . . .We are entitled to the benefit of the district court's judgment, which is always helpful and usually persuasive.");

*accord Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 343 (2d Cir. 2010) (remanding where the district court had not undertaken the required analysis). In vacating the district court's conclusions, we express no opinion as to the underlying issues. Accordingly, we hold that RACER's § 113 claim as to the expanded territory is prudentially ripe and vacate the district court's conclusion that either RACER failed to state a claim under § 113 or that any such claim is time barred.

On remand, we leave this case in the able hands of the district court, which is best positioned to determine how the case should proceed. We note only a few additional points for the district court to consider. First, RACER has made clear that it is pursuing relief under §§ 107 and 113 in the alternative, as it has a right to do, *see* Fed. R. Civ. P. 8(d)(2)-(3), that it believes it is entitled to relief under § 107, and that its § 113 claim is contingent on the rejection of its § 107 claim. Because we hold that the § 107 claim is ripe, it may be logical for the district court to address the merits of that claim first because, if it is successful, the court need not address the § 113 claim at all.

Second, if the district court concludes that on the record before it, the § 113 claim fails to state a claim or is time-barred, it may enter judgment dismissing

that claim. However, any such judgment should clearly articulate on what grounds the claim is dismissed. If, on the other hand, the district court concludes that neither alternative basis for dismissal is sufficiently clear on the record before it, then it may allow both the §§ 107 and 113 claims to proceed until after the record is further developed.

Third, as we have previously explained, if a plaintiff has a claim that "fits squarely within the more specific requirements of § 113[]," the plaintiff cannot choose instead to proceed under § 107. *Niagara Mohawk Power Corp.*, 596 F.3d at 127-28. Some of the Defendants argue that RACER cannot proceed under § 107 because it had a claim under § 113, albeit one that is now time-barred. *See* Lennox Appellees' Br. 5-8. We leave it to the wise discretion of the district court whether that argument suggests that some consideration of the § 113 claim is warranted as a preliminary question in evaluating RACER's revived § 107 claim.

Finally, both parties urge us to address issues related to whether RACER has a viable § 113 claim as to OU-2. Some of the district court's observations in dicta might bear on whether such a claim would be viable. But that dicta, which, in any event, are found in the vacated portion of the district court's opinion

discussing RACER's § 113 claim as to the expanded territory, are not reviewable on appeal. *See In re Bean*, 252 F.3d 113, 118 (2d Cir. 2001).

## CONCLUSION

We conclude that the district court correctly ruled that the complaint must be amended to substitute EPLET, the trustee of RACER Trust, as plaintiff.

We VACATE and REMAND the district court's conclusions regarding RACER's §§ 107 and 113 claims. In particular, we conclude that both claims are prudentially ripe, and that to the extent the district court dismissed the § 113 claim for other reasons, it failed to adequately explain its reasoning. We decline to address the other threshold and merits issues raised by the parties, which the district court has not addressed in the first instance.

Finally, we VACATE and REMAND the district court's decision dismissing RACER's state law claims, which was premised on the dismissal of the federal claims. If the district court concludes that either of RACER's federal claims can proceed, it should also reconsider whether to exercise supplemental jurisdiction over the state law claims. As to RACER's claim for declaratory relief, although the district court was correct to observe that a claim for declaratory

41

relief is not an independent cause of action, on remand RACER may continue to

seek declaratory relief as a remedy for its other claims.